IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROY BROOKS, JR.                )
                               )
     Plaintiff,                )
                               )
v.                             )    CASE NO.: 2:17-cv-803-SRW
                               )
ALLSTATE INDEMNITY             )
COMPANY,                       )
                               )
     Defendant.                )

# MEMORANDUM OPINION AND ORDER[1]

This matter is before the court on defendant's motion for partial summary judgment on plaintiff's claim for negligence, which is set out in count II of the original complaint; bad faith, which is set out in count III of the original complaint; and gross negligence and wantonness, which is set out in count IV of the original complaint. Doc. 24. Plaintiff filed a response to the motion, Doc. 30, conceding that counts II and IV were due to be resolved in the defendant's favor, *id.* at 2. Defendant filed a reply to the motion. Doc. 31. Upon its review of the motion and the record, the court concludes that the motion is due to be granted.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Doc. 16; Doc. 17.

1

Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077,

1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**BACKGROUND**

Plaintiff commenced this action based upon an insurance contract on his home. Doc. 1-3 ¶¶ 6-7. The complaint alleges claims against the defendant insurer, Allstate Indemnity Company, Allstate Insurance Company, and Joseph Neighbors, an insurance adjuster working for Allstate Insurance Company, for breach of contract (count I); negligence (count II); bad faith (count III); and gross negligence and wantonness (count IV). Doc. 1-3 ¶¶ 16-39. Plaintiff and defendant jointly consented to dismissal of defendants Allstate Insurance Company and Joseph Neighbors, Doc. 15, and the court dismissed those parties without prejudice, Doc. 18. Defendant filed a motion for partial summary judgment and brief supporting such motion for plaintiff's claims on counts II, III, and IV. Doc. 24; Doc. 25.

Defendant's brief supporting its motion for summary judgment contends that plaintiff has failed to meet his burden of establishing that he is entitled to a directed verdict on his breach of contract claim, and of showing that defendant had no legitimate or arguable reason for denying plaintiff's insurance claim. Doc. 25 at 10-12. Specifically, defendant contends that the record demonstrates that the fires which are the subject of plaintiff's insurance claim were caused by arson, that plaintiff made material misrepresentations to

3

defendant in the course of defendant's investigation of the plaintiff's claim, and that plaintiff failed to comply with the conditions precedent to coverage in his policy with defendant. *Id.* at 13-17. Defendant also argues that it undertook a detailed and thorough investigation of plaintiff's claim, including seeking the advice of counsel, which evidences its good faith. Finally, Defendant asserts that negligence and gross negligence and wantonness claims are unrecognized causes of action in insurance claims under Alabama law, and should be dismissed.

In response, plaintiff concedes that counts II and IV, for negligence and gross negligence and wantonness, are due to be dismissed. Doc. 30 at 2. Plaintiff also clarifies that his claim of bad faith is a "normal" failure-to-pay claim and not an "abnormal" failure-to-investigate claim. *Id.* Plaintiff argues that defendant's motion for partial summary judgment should fail because there is insufficient evidence to show that plaintiff started the fires, because plaintiff made no material misrepresentations, and because defendant has failed to show that it was prejudiced by plaintiff's delay in meeting the conditions precedent to coverage under his agreement with defendant. *Id.* at 9-15.

## UNDISPUTED MATERIAL FACTS[2]

---

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). These are the facts for summary judgment purposes only; they may or may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth

A.    Plaintiff's Policy and Insurance Coverage

Defendant issued a homeowner's insurance policy to plaintiff for his residence in Brundidge, Alabama, with the effective dates of Dec 26, 2014 to Dec. 26, 2015. Doc. 1-2 at 4. The policy provided coverage for sudden and accidental direct physical loss to Plaintiff's residence, including such losses caused by fire. *Id.* at 14. The policy specifies that, *inter alia*, "[insurer does not] cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance," and that insurer may cancel the policy for "material misrepresentation, fraud or concealment of material fact in presenting a claim, or violation of any of the policy terms." *Id.*

The policy also details plaintiff's duties after a loss in order to be covered under the policy which include, but are not limited to, giving prompt notice of any loss; protecting the property from further loss; keeping an accurate record of repair expenses; providing a detailed list of destroyed or stolen property; providing all accounting records, bills, invoices, and vouchers; submitting to examinations under oath as often as the insurer reasonably requires; and producing a signed, sworn proof of loss to the insurer within 60 days of the loss. *Id.* at 22.

B.    Details of Plaintiff's Insurance Claim

---

Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

On December 7, 2015, at approximately 2:08 p.m., the Brundidge Fire Department was called to plaintiff's residence in response to a fire.[3] Doc. 26-1. The property was secured at the time of their arrival and forced entry was required. Doc. 25 ¶ 2; Doc. 30 at 3. After the fire was extinguished, a thermal imaging camera was used to ensure that no hotspots or remaining embers were active on the property. Doc. 25 ¶ 2; Doc. 30 at 3. Plaintiff reported the fire to the defendant that same evening. Doc. 26-5 at 7. On December 8, 2015, at approximately 9:27 a.m., the Brundidge Fire Department was called to the same address in response to a fire. Doc. 26-2. On December 9, 2015, defendant retained Bert Peete, a certified fire investigator, to investigate the fire on plaintiff's property and to determine the cause and origin of each incident. Doc. 25 ¶ 5; Doc. 30 at 4.

At the time of the fire, plaintiff primarily stayed with his estranged wife in Troy, Alabama, while his daughter, Angela Brooks, and her two children resided full time at his property in Brundidge, which is the subject of the insurance claim. *See* Doc. 25 ¶ 10; Doc. 30 at 4; Doc. 26-7 at 3-4; Doc. 26-6 at 4. Ms. Brooks stated that she was the last person at the property before the fire. Doc. 25 ¶ 12; Doc. 30 at 5. Only plaintiff, Ms. Brooks, and two out-of-state relatives had keys to the property. Doc. 26-7 at 12.

---

[3] The Brundidge Fire Department Report reports the location of the fire as "907 Elm St." rather than 907 North Main St., the address of the property in question. However, the reports list Roy Brooks as the property owner. The property is located at the corner of Elm and Main Streets, which appears to account for the discrepancy between the address listed on both fire reports and the actual address of the property.

In a sworn proof of loss form submitted to defendant on August 15, 2016, plaintiff claimed $196,056 as a result of the loss occurring from the fires.[4] Doc. 26-15 at 2.

C.   Facts Relevant to Arson

Bert Peete, the certified fire investigator retained to investigate plaintiff's claim, was assigned the case by Jerry Hamilton on December 9, 2015, with specific instructions to conduct a cause and origin examination, which he conducted on December 10, 2015. Doc. 26-4 at 4. Peete reviewed the Brundidge Fire Department's incident reports and a laboratory analysis of debris samples taken from the property after the fire; interviewed plaintiff, plaintiff's daughter, Brundidge Fire Department chief Glen Adkins and assistant chief Neil Sneed; and examined the plaintiff's property in person. *Id.*

Peete's report notes that the first fire, which involved the front center bedroom and a wardrobe in the right front bedroom, "originated in two separate and distinct locations and [was] incendiary in nature." *Id.* at 3, 7. Peete notes that the natural heat and ignition sources in the front center bedroom included the branch circuit wiring, two receptacles, and an overhead light fixture with a wall mount switch, but "no competent heat sources were found within the right front bedroom." *Id.* at 5. Peete determined that there was no evidence of failure at any of the electrical components, and they were not the source of the fire. *Id.* The report further indicates that "no heat sources were found within the area of origin" of the fire that occurred in the right front bedroom, and that there were "no fire

---

[4] The proof of loss submitted by plaintiff lists the date of loss as occurring at 3:00 p.m. on December 7, 2016. However, the record evidence indicates that the loss events which are the subject of plaintiff's claim occurred on December 7, 2015 and December 8, 2015. Doc. 26-1; Doc. 26-2.

7

patterns connecting [the second] area of burning with the area of burning in the front center bedroom," thereby concluding that the first fire had two separate points of origin. *Id.*

The second fire, which involved a bed along the front wall in the right front bedroom, was "not a rekindle of the previous fire and it [was] also incendiary." *Id.* at 3, 7. Peete's report notes that after the first fire, "the electrical service was disconnected … and no natural heat or ignition sources were present within the right front bedroom" at the time the second fire occurred.

A lab test of debris samples taken from plaintiff's property revealed that "no ignitable residues were identified" in either of the samples. However, the lab report also notes that "[n]egative findings do not exclude the possibility that an ignitable liquid may have been used." Doc. 30-3; Doc. 26-4 at 5. Peete's report ultimately concludes that "[t]he patterns of burning indicate three separate and distinct areas of burning that occurred over a 16-hour period." Doc. 26-4 at 5. Peete's opinion is that both fire events were incendiary in nature (that is, "deliberately set with the intent to cause the fire to occur in an area where the fire should not be"). Doc. 26-4 at 3, 6-7.

D. Facts Relevant to Misrepresentation

Defendant received a handwritten list of items destroyed by the fire from plaintiff on March 14, 2016 which listed groups of items with values totaling $35,525. Doc. 26-17 at 4. Plaintiff was informed that defendant's inventory forms should be used, and that more detailed descriptions of each item and its purchase and value were required. Plaintiff submitted a three-page inventory on August 17, 2016, totaling $50,385. *Id.* In a summary of schedules prepared in a bankruptcy filing in December 2014, plaintiff reported the total

value of his household goods at $3,063, including $2,000 in household goods and furnishings, $260 in books and pictures, $500 in apparel, $40 in jewelry, $50 in hobby equipment, and $200 in tools and yard equipment. Doc. 26-16 at 5-7.

In a recorded statement taken on December 9, 2015, plaintiff said that he owed $38,000 on the mortgage on the property, and that his monthly payments of $420 were up to date. Doc. 26-6 at 6-7. In a December 17, 2015 recorded statement, plaintiff stated that the mortgage balance on his property was $39,000, but that the payments had been reduced from $400 to $348 per month. Doc. 29-1 at 5. Plaintiff reiterated that payments were current. Doc. 29-1 at 6. Plaintiff also said that he did not have any liens, suits, or judgments against him, and was not experiencing any financial difficulty. Doc. 26-6 at 8.

An order denying a motion for relief from stay filed on October 14, 2015 showed that plaintiff's mortgage payments were in arrears for several months in the months immediately preceding the fire, and that plaintiff was due to pay $454.50 in monthly mortgage payments. Doc. 26-21 at 3. Subsequently, a trustee's motion to dismiss plaintiff's bankruptcy case filed in January 2016 shows that plaintiff had only made one payment pursuant to his payment plan in 180 days prior to the motion's being filed. Doc. 26-22 at 2. Documentation from First National Bank also shows that as of August 4, 2015, plaintiff's bank account had incurred more numerous than usual overdraft fees and returned item fees. Doc. 26-20 at 2.

Plaintiff also admits that in his recorded statement to Joseph Neighbors, he said both that he woke up around 11:00 a.m. on the date of the fire, and that he woke up between 12:00 and 1:00 p.m. on the date of the fire. Doc. 30 ¶ 13(d).

9

E.  Facts Relevant to Failure to Comply with Conditions Precedent to Coverage

On February 6, 2016, Sue Williamson, attorney for defendant, sent a letter to plaintiff and Ms. Brooks advising them of the insured's duties after loss provisions in plaintiff's policy, and asking both plaintiff and Ms. Brooks to submit to examinations under oath and submit documentation related to the plaintiff's insurance claim. Doc. 26-9. On March 24, 2016, Ms. Williamson sent plaintiff a letter which reiterated the policy requirements for plaintiff's duties after loss; specified that defendant had not received a sworn proof of loss or proper contents inventory from plaintiff, complete loan payment history and loan payoff documentation, bank statements and cancelled checks, cellular phone records, and utility service records for the property; noted that defendant had received insufficient documentation from plaintiff's daughter for the purpose of personal property inventory; and stated that the documents had been requested multiple times. Doc. 26-12 at 4. Defendant extended plaintiff's time for submission of the missing documents until April 18, 2016. *Id.* at 5. On June 20, 2016, Williamson sent an additional letter informing plaintiff that no new documents had been received until that date, and that the received documents were not sufficiently responsive to the original request. Doc. 26-13 at 2. The letter indicated that defendant "has repeatedly asked the Brooks to submit the required properly completed claim forms and to produce other documents necessary to complete the claim investigation. However, in spite of multiple written and oral requests, the Brooks have failed to comply with the policy Conditions as noted." *Id.* On August 1, 2016, Williamson issued a similar letter informing plaintiff that no further documents had been received, that a determination on plaintiff's claim would be made based on all

documentation submitted by August 15, 2016, and that no further extensions would be granted. Doc. 25-14 at 2-4. Plaintiff submitted a proof of loss on August 15, 2016.

Plaintiff never submitted a detailed contents inventory that was itemized and included purchase receipts or proofs of value for any item for which plaintiff made a claim. Doc. 26-17 at 4. The final inventory submitted by plaintiff listed several groups of items, including $10,000 for clothes, $3,000 for clothes, $3,000 for pictures, $400 for costume jewelry, $1,150 for jewelry, and $9,000 for various personal small items. *Id.* Asked to provide more detailed information for these items, plaintiff responded that:

> I have sent the information you requested on the appropriate forms. As would be typical with anyone, I can't remember each place I purchased information. The line items clothing of $3,000 and $10,000 you referenced surely is grossly undervalued, but as you know it would be impossible to remember and identify each item of clothing and remember where it was purchased. The line item for personal items $9,000 consisted of various small items in the house such as extension cords, irons, toiletry items, cleaning items food in refrigerator, floor rugs and list would go on and on. This included two sewing machines, as well that was listed in this amount. As you are aware, this line item would be a lot more if possible to remember all items.

*Id.* at 4-5. Defendant, therefore, had insufficient information to assess plaintiff's claim of up to $22,000 in personal property.

## DISCUSSION

In this diversity action, the court applies the law of Alabama to the parties' claims and defenses. "Under the doctrine enunciated in Erie and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), and citing *Erie R.R. v. Tompkins*, 304 U.S. 64

11

(1938)). Defendant moves for summary judgment on the grounds that it had three debatable, arguable reasons for denying plaintiff's claim: arson, misrepresentation, and a failure to comply with conditions precedent to coverage.

"Under Alabama law, a bad-faith claim comes in two varieties: 'normal' and 'abnormal.'" *Atl. Specialty Ins. Co. v. Mr. Charlie Adventures, LLC*, 644 F. App'x 922, 925-26 (11th Cir. 2016) (quoting *Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998)). "[A]n insurer may be held liable for bad faith when it refuses to pay a claim and (1) has no lawful basis for refusing to pay and has actual knowledge of that fact" (the normal case), or "(2) has intentionally failed to determine whether it had a lawful basis for refusing to pay" (the abnormal case). *Sherrin v. Northwestern Nat'l Life Ins. Co.*, 2 F.3d 373, 380 (11th Cir. 1993). *See also Turner v. State Farm Fire & Cas. Cos.*, 614 So. 2d 1029, 1032 (Ala. 1993); *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981). In the normal case, the plaintiff must prove four elements: (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); and (d) the insurer's actual knowledge of [the absence of] any legitimate or arguable reason. *Atl. Specialty Ins. Co.*, 644 F. App'x at 926 (quoting *Emps.' Benefit Ass'n*, 732 So. 2d at 976) (internal quotations omitted). The burden on the plaintiff in a bad faith case is a heavy one, and in the "normal" case the proof offered must show that plaintiff is entitled to a directed verdict on the contract claim and entitled to recover on the contract claim as a matter of law, in order to make out a *prima facie* case

of bad faith refusal to pay. *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

"[W]here a legitimate dispute exists as to liability … a tort action for bad faith refusal to pay a contractual claim will not lie." *Bowers v. State Farm Mut. Ins. Co.*, 460 So. 2d 1288, 1290 (Ala. 1984). "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim, and thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." *Id.*; *State Farm Fire & Cas. Co. v. Balmer*, 672 F. Supp. 1395, 1403 (M.D. Ala. 1987) ("the fact that conflicts exist in the evidence with regard to the validity of the [insured's] claim dictates that the issue of bad faith must fail."). "Of course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (quoting *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)). "[S]tated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Sherrin*, 2 F.3d at 380 (citing *Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354, 359 (Ala. 1992)). *See also Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982); *Jones v. Alabama Farm Bureau Mut. Cas. Co.*, 507 So. 2d 396, 402 (Ala. 1986). "To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable." *Liberty Nat'l Life Ins. Co. v. Allen*, 699 So. 2d 138, 143 (Ala. 1997). *See also Gillion v. Alabama Forestry Ass'n*, 597 So. 2d 1315, 1321 (Ala. 1992) ("If any one of the reasons for denial of coverage is at least arguable, the Court need not look any further") (quoting *McLaughlin v. Alabama Farm*

*Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983)); *Alfa Mut. Ins. Co. v. Smith*, 540 So. 2d 691, 695 (Ala. 1988) (same). "[T]he existence or non-existence of the debatable reason [ ] is critical to the bad faith claim and once such is determined to have existed at the time the insurer denied the claim, questions of whether the claim was properly investigated and evaluated are moot." *Balmer*, 672 F. Supp. At 1406. "Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision is made." *Dutton*, 419 So. 2d at 1362.

Defendant puts forth three reasons for denying plaintiff's claim, which are examined here in turn: (i) arson; (ii) misrepresentation; and (iii) failure to comply with condition precedent to coverage. As plaintiff has failed to show the absence of any reasonably legitimate or arguable reason for defendant's refusal or the defendant's actual knowledge of the absence of such a reason, defendant's motion for partial summary judgment is due to be granted.

i. Arson

Under Alabama law, it is well settled that arson is a lawful basis upon which an insurer may deny an insurance claim. *Balmer*, 672 F. Supp. at 1399. Therefore, where there is conflicting evidence as to whether the insured's claim is invalid on grounds of arson, Alabama law dictates that the issue of bad faith must fail. *See id.* at 1403. As stated in *Fondren v. Allstate Ins. Co.*, for an insurer to establish an arson defense under Alabama law:

> [a]n insurer must prove by competent and relevant evidence arson by someone, motive by the plaintiff, and unexplained surrounding circumstantial evidence implicating the plaintiff. The insurer's burden of

> proof is not particularly heavy. Proof may be made by circumstantial evidence … proof beyond a reasonable doubt, or proof by direct evidence, is not required.

790 F.2d 1533, 1535 (11th Cir. 1986) (internal quotations and citations omitted). In showing motive, "the most common evidence discussed as supporting the motive element of arson deals with the financial condition of the insured or the prospective financial benefit an insured stood to receive from the burning of the insured's property." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Lane*, 656 So. 2d 371, 375-76 (Ala. 1995) (collecting cases). Here, the record evidence shows that at the time defendant denied plaintiff's claim, it had knowledge that the fire investigator concluded that that fires were incendiary in nature, that plaintiff had failed to make payments pursuant to his bankruptcy plan, and that plaintiff had made conflicting statements regarding his whereabouts on the day the first fire occurred. As in *Williams v. Allstate Ins. Co.* – where the court found sufficient evidence to rule in favor of insurer's motion for summary judgment on an insured's breach of contract claim where the insurer showed that a cause and origin investigation revealed that fires were caused by arson, that the insured had motive because they were in bankruptcy, and that one of the insureds was the last person to leave the building and had the only key to the residence – defendant here has substantiated its arson defense by showing that a cause and origin investigation revealed that the fires were caused by arson, that plaintiff was in a dire financial situation in the months leading up to the fire, and that plaintiff and his daughter were the only ones with keys and were the last to be present at the property before the fires. *Williams v. Allstate Ins. Co.*, 591 So. 2d 38, 41 (Ala. 1991). Similarly, the Eleventh Circuit in *East Park, Inc. v. Fed. Ins. Co.* found that access to one of a limited

number of keys contributed to an inference of unexplained surrounding circumstantial evidence which implicated the insured in an arson case where the doors to the building in question were locked and no sign of forced entry existed. *East Park, Inc. v. Fed. Ins. Co.*, 794 F.2d 616, 619-620 (11th Cir. 1986). Plaintiff contends that the absence of ignitable liquids in the debris samples from the fire, and a prior history of electrical problems at the property, sufficiently demonstrate that the fires may not have been caused by arson, and maintains his belief that the second fire was a rekindle of the first fire incident. Doc. 30 at 9. However, plaintiff's conclusory allegations based on his subjective beliefs are insufficient to create a genuine dispute of material fact. *Holifield*, 115 F.3d at 1564 n.6. Plaintiff has not submitted any evidence that would rebut the conclusions of the cause and origin investigation. Also, despite conceding that he has experienced financial difficulties, plaintiff makes bare assertions that he "denies he would ever burn down his home for financial gains" and that defendant's failure to place plaintiff or Ms. Brooks at the property at the time of the fire show that the circumstantial evidence does not implicate him in arson. Doc. 30 at 11-12. These aruments, too, are merely conclusory. Defendant has shown that, at the very least, it had a debatable, arguable reason for denying plaintiff's insurance claim, and plaintiff's bad faith claim cannot be sustained.

ii.    Misrepresentation

Alabama law also dictates that misrepresentation after the fact is a lawful basis upon which an insurer may deny an insurance claim, and where there is conflicting evidence as to whether the insured's claim is invalid on grounds of misrepresentation, a bad faith tort claim must fail. *See Balmer*, 672 F. Supp. at 1399, 1403. For an insurer to prevail on a

misrepresentation defense under Alabama law, it need only show by a fair preponderance of evidence the elements of misrepresentation. *Id.* at 1399. To void an insurance policy, an insured's misrepresentations after a loss must be made with the actual intent to deceive and be related to a matter which is material. *American Fire & Cas. Co., Inc. v. Archie*, 409 So. 2d 854, 856 (Ala. Civ. App. 1981).

Plaintiff concedes that he made statements during defendant's investigation of his insurance claim which could be understood to be conflicting statements about the circumstances surrounding the loss. However, plaintiff makes only bare assertions that he did not grossly exaggerate the value of his personal property in his sworn proof of loss. Doc. 30 at 6, and provides no evidence which would resolve the factual dispute about the value of plaintiff's personal property losses. During the course of defendant's investigation of plaintiff's claim, plaintiff advised defendant that the personal property values identified in his bankruptcy filing were not correct, and that he never notified the court that the schedules submitted to the Bankruptcy Court were incorrect. Doc. 26-17 at 34. Yet, as noted above, plaintiff also failed to provide detailed information about personal property claimed under defendant's insurance policy. While there is insufficient evidence to determine whether defendant would prevail on a breach of contract claim for misrepresentation, defendant has sufficiently shown that there is conflicting evidence as to the value of plaintiff's personal property, and that it had a debatable, arguable reason to deny plaintiff's claim for misrepresentation after the loss. Plaintiff has failed to submit evidence which would demonstrate that no conflict exists and, therefore, plaintiff's claim of bad faith must fail.

iii. Failure to Comply with Condition Precedent to Coverage

Alabama law makes it clear that insured persons must meet contract conditions precedent to recovery in order to prevail in breach of contract claims, and Alabama courts have routinely awarded summary judgment to insurers where the insured failed to meet conditions precedent to recovery, such as requirements to submit a proof of loss. *See, e.g. Morton v. Auto Ins. Co.*, 102 F. Supp. 32 1248, 1262-63 (N.D. Ala. 2015) (where insured failed to submit an examination under oath); *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1348 (M.D. Ala. 2012) (construing post-loss duty provisions as strict conditions precedent to coverage), *aff'd* 519 F. App'x 656 (11th Cir. 2013); *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1362 (S.D. Ala. 2010) (where insured did not provide amended claim/inventory forms after stating that the submitted forms were inaccurate); *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1045 (Ala. 2014) ("[A]n insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the insurer to make a loss payment."); *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998) ("[A]n insurer's obligation to pay or evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."). While failure to meet a deadline may not be a material failure in complying with conditions precedent to coverage in an insurance policy, when an insured fails to submit accurate information from which an insurer could calculate or pay a claim before filing a lawsuit, or if the delays are part of a scheme to obstruct an insurer's investigation of a claim, even small failures to comply with post-loss duty

18

provisions may be material. *See Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1322 (N.D. Ala. 2018) (citing *Pittman*, 868 F. Supp. 2d at 1348; *Hillery*, 705 F. Supp. 2d at 1364).

Here, there is ample evidence that, despite repeated requests from defendant for plaintiff to furnish a sworn proof of loss within 60 days of plaintiff's insurance claim, plaintiff did not provide such a document until more than six months after the initial request was made in writing, and more than eight months from the date of the claim. While, as noted above, such delay may not be fatal to plaintiff's case, plaintiff never submitted detailed descriptions, proof of value, or purchase information for as much as $22,000 in claimed personal property losses to defendant for evaluation. Plaintiff asserts that he submitted a proof of loss within a reasonable time and before filing suit, and that defendant was not prejudiced by his failure to cooperate with defendant's other requests for production. However, because plaintiff has not offered any evidence demonstrating that defendant would have been able to accurately assess plaintiff's personal property claims without further documentation from plaintiff, the court finds that plaintiff has not shown that defendant lacked a debatable, arguable reason for denying coverage under plaintiff's insurance policy. Accordingly, defendant's motion for partial summary judgment is due to be granted, and plaintiff's bad faith claim cannot succeed.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that the defendant's motion for partial summary judgment is GRANTED as to counts II, III, and IV, and judgment is entered in favor of the defendant

and against the plaintiff on plaintiff's claims of negligence, bad faith, and gross negligence/wantonness.

Done, on this the 13th day of December, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge